Syllabus.

EDWARD BRINGHURST, Jr., Executor of the Last Will
and Testament of HANNAH SHIPLEY, Deceased, *v.*
ELIZABETH B. ORTH et al.

New Castle, September Term, 1894.

Wills — codicils — construction of; Wills — revocation by
codicil; Construction of the words " heirs-at-law " and
" issue " in a will.

1. In order that a codicil shall operate as a revocation of
any part of a will, in the absence of express words to
that effect, its provisions must be so inconsistent with
those of the will as to exclude any other legitimate in-
ference than that of a change in the testator's inten-
tion. They are both supposed to be made and executed
with the same solemnity and deliberation, and, there-
fore, both are entitled to the same degree of considera-
tion. The will and the codicil constitute part of the
same testament, and they are each, in legal estima-
tion, equally sacred and inviolate. Any part of the
one, not inconsistent with the other, either expressly or
inferentially, cannot be set aside as unnecessary lan-
guage.

2. In the construction of a will with a codicil annexed, any
part of the one, not inconsistent with the other, either
expressly or inferentially, cannot be set aside as un-
necessary language.

3. The term " issue," used in a codicil, and the term " heirs-
at-law," used in a will, when employed to denote the
beneficiaries and not to limit the quantity or duration
of an estate in lands, are not, of necessity, so con-
tradictory as to lead to a revocation of the provision of
the will.

4. In one of the items of her will, the testatrix provided that "if any of the devisees or legatees in this my will named, shall die before me, then the said devises and legacies shall not lapse, but shall pass and go to such person and persons as would be the heirs-at-law of such devisee or legatee under the intestate laws of the State of Delaware." In the codicil to said will, it was provided that, "in case of the death before my death of any of the legatees or devisees named in my will, the shares of those dying before me, to go to their issue, the said issue to take the share of their deceased parent, except as to any share which would go to S. D. P.," etc. Held, that the codicil did not revoke the quoted provision of the will, and that the shares of certain legatees dying before the testatrix without issue, did not lapse.

Bill of Interpleader and for instructions to executor and construction of will. The facts are stated in the opinion of the Chancellor.

George Gray and Herbert H. Ward, for Elizabeth B. Orth, Elizabeth B. Orth, executrix of Olivia F. Dixon, deceased, and Elizabeth B. Orth, surviving executrix of Anna Shipley Dixon, deceased.

The provisions of the will of Hannah Shipley, deceased, which are set forth in the bill of interpleader as apparently inconsistent, and as creating the necessity for this court to construe the same, are as follows:

(1) "Provided, always, and I do hereby direct that if any of the devisees or legatees in this my will named shall die before me, then the said devises and legacies shall not lapse, but shall pass and go to such person and

persons as would be the heirs-at-law of such devisee or legatee under the intestate laws of the State of Delaware." This provision appears in the body of the original will, dated 16th of June, 1873.

(2) " Second. In case of the death before my death of any of the legatees or devisees named in my will, the share of those dying before me to go to their issue, the said issue to take the share of their deceased parent, except as to any share which would go to Samuel D. Paschall, as to which, I devise as follows, to-wit: " etc. This provision appears in the second codicil, dated 28th of November, 1885.

Considering these passages of the will, it may be observed:

(1) That the testatrix has in the plainest and most positive terms " directed " that no lapse shall take place under the state of facts set forth in the bill of interpleader and the answers thereto. Her intent in this particular is wholly unmistakable. In no other part of the will is any contrary intention to any degree whatsoever indicated. The very passage which is cited as inconsistent with the one containing this provision against lapse shows, so far as it goes, the same anxious care to prevent intestacy in any part of her estate, and to provide against the possibility of a lapse of any legacy.

Where a will contains a provision against lapse, the will must be so construed as to avoid a lapse if the testatrix has provided proper substitutes to take in lieu of the original legatees. Williams on Executors, *1207, *1210; Sibley v. Cook, 3 Atk. 572; Bridge v. Abbott, 3 Bro. C. C. *224; Rivenett v. Bourguin, 53 Mich. 10; Appeal of Trustees of University, 97 Penn. St. 187-200.

There can be no contention but that the testatrix has clearly provided proper substitutes to take in lieu of the original legatees; and this contention arises principally over who those substitutes are.

(2) There exists no positive inconsistency between the passage quoted from the original will and that quoted from the second codicil. Inasmuch as "issue" of a "parent" are the heirs-at-law, where there are any issue, the provision from the codicil covers one class of the persons who should be included within the words "heirs-at-law," used in the provision from the original will. The provision from the second codicil is clearly consistent with that from the original will, because that codicil apparently designates a class of persons to take as substitutes of the original legatees which differs only in range, but not in kind, from the class of persons designated in the original will, both classes being heirs-at-law of such deceased legatees; in other words, the same and not a different class of persons, in quality, is referred to in both provisions.

A codicil is part of the will to which it is attached or refers, and it and the original will must be taken and construed as one testament. Williams on Executors, *8, etc., and note G (Perkins' ed.); Collier v. Collier, 3 Ohio St. 369, 373; Negly v. Gard, 20 id. 310; Neff's Appeal, 48 Penn. St. 501, 507, 509; Doe d. York v. Walker, 12 M. & W. 591, 600, 601; Boyle et al. v. Parker, 3 Md. Ch. 42; Willett v. Sandford, 1 Ves. 186; Westcott v. Cady, 5 Johns. Ch. 343; Beable v. Dodd, 1 T. R. 193, 202, 203, 204.

In interpreting a will and codicil, the general rule is that the whole will takes effect so far as it is not in-

consistent with the codicil; and the provisions of the latter are to be so construed, if it can fairly be done, as to make it harmonize with the body of the will. It is the established rule not to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicil. 1 Jarman on Wills, 342-349 (Bigelow, 5th ed.); Norman v. Kynaston, 3 DeG., F. & J. 29; Wetmore v. Parker et al., 52 N. Y. 450, 461, 462, 465; Cleobury v. Beckett, 14 Beav. 583; Murch v. Marchant, 6 Man. & Gr. 813, 825; In re Arrowsmith's Trustees, 2 DeG., F. & J. 474, 479; Molyneux v. Rowe, 8 DeG., M. & G. 368, 375; Evers v. Ward, 18 Q. B. 197, 221, 223; Quincy, Executor, v. Rogers et al., 9 Cush. 291, 295, etc.; Homer v. Brown, 16 How. 354, 368; In re Howard, L. R., 1 Prob. & Div. 636; Agnew v. Pope, 1 DeG., M. & G. 49; Roach v. Haynes, 6 Ves. Jr. 153, 156; Nelson v. McGiffert, 3 Barb. 164; Boyle et al. v. Parker, 3 Md. Ch. 42, etc.; Pue v. Pue, 1 id. 382, 385; Butler v. Greenwood, 22 Beav. 303; Pilsworth v. Mosse, 14 Ir. Ch. 163, 173, 175, 177, etc.

As a general rule, a codicil will not be held to be inconsistent beyond the clear import of its language; and where a provision in the original will is clear, it is incumbent upon those who contend that it is not to take effect by reason of an alleged revocation in a codicil, to show that the intention to revoke is equally clear and free from doubt as the original intention expressed in the body of the will. 1 Jarman on Wills, 349; 1 Williams on Executors, 220 and note, *185; Doe d. Hearle v. Hicks, 8 Bing. 479, 484, 489; Williams v. Evans, 1 El. & Bl. 727, 739; Robertson v. Powell, 2

Hurl. & Colt. 762; Murch v. Merchant, 6 M. & G. 813, 825; Wetmore v. Parker et al., 52 N. Y. 450, 451, 462, 465; Quincy, Executor, v. Rogers et al., 9 Cush. 291, 295, etc.; Cleobury v. Beckett, 14 Beav. 583; Pillsworth v. Mosse, 14 Ir. Ch. 163, 173, 175, 177, etc.

The general intent of the testatrix that there shall be no intestacy in any part of her estate, and that there shall not be a lapse in case of the death of any legatee before her, is too evident for contrary argument. The opposite construction of this will from that contended for by Mrs. Orth would produce an intestacy and such a lapse. But where in a will there is a manifest general intent, the construction of the will should be such as to effectuate such general intent, and this is the rule, even though by that construction some particular intent may be defeated    Allyn v. Mather, 9 Conn. 114, 127; Cordry v. Adams, 1 Harr. (Del.) 439, 441; Bernard's Lessee v. Bailey & Kettlewood, 2 Harr. 56, 65; Rodney v. Burton, 4 id. 183, 186; Robinson v. Robinson, 1 Burr. 38, 50, etc.; Pue v. Pue, 1 Md. Ch. 382, 387.

But it should be noted that the particular intent in this second codicil, that the issue of a deceased legatee should take in lieu of such deceased legatee, would not be defeated by leaving the particular provision in the body of the will in question in full force; but, on the other hand, even such particular intent would be fully effected and insured.

It is a settled rule of construction where a testator has manifested an intent to dispose of his whole estate by his last will, that a testator is never presumed to intend to die intestate as to any part of his estate, to which his attention seems to have been directed, and

a court of equity will put such a construction upon equivocal words as to prevent such a result. Collier v. Collier, 3 Ohio St. 369, 374; Meberly v. Strode, 3 Ves. 450, 455; Booth v. Booth, 4 id. 403, 407; Bosley v. Bosley, 14 How. 398, 399; In re Colshead's Will, 2 DeG. & J. 689, 692.

(3) But a critical examination of the second codicil will show that it contains no evidence of an intent on the part of the testatrix to revoke generally the explicitly and fully-expressed provisions as to lapsing and as to substitution of persons to take in lieu of deceased legatees, which appear in the body of the will.

A reference to section 6 of the bill of interpleader discloses the fact that Mary Anna Paschall, the legatee of one equal seventh share of testatrix's residuary estate, " predeceased the said testatrix, and left to survive her Samuel D. Paschall," and others, being her children and heirs-at-law. The whole of the second codicil bears internal evidence of having been inspired by this fact, and relates exclusively, with the exception of the third item, to Samuel D. Paschall, and his relations to the testatrix's estate.

All the directing and positive provisions of the second item of this codicil, which item contains the provision which is alleged to be inconsistent with the provision against lapsing in the body of the will, relate wholly to the share which " would go to Samuel D. Paschall," upon the decease of his mother. The phrase in this item referring to the substitution of persons to take in lieu of legatees who should die before the testatrix, does not constitute a grammatical sentence, it is a recital only of the former provision of the

will relating to the same subject-matter, and is merely introductory to, and explanatory of, the main object of the item, which is to provide in an especial and exceptional manner for the said Samuel D. Paschall and his share in the estate. It amounts to the same thing as if the testatrix had said: " It is my general intention, as I have heretofore provided, that in case of the death before my death of any of the legatees or devisees named in my will, who shall leave children, as Mary Anna Paschall has done, that the share of such decedents before me, shall go to their children, but in the case of Samuel D. Paschall, son of Mary Anna Paschall, I devise as to his share, which he shall so obtain in lieu of his mother, as follows: " Whereupon the testatrix places the share of the said Samuel D. Paschall in trust, freed from the claims of any creditors he may at any time have, and limits the principal over to his children.

The sole apparent object and intent of this item in question in the second codicil is to protect Samuel D. Paschall and his share of testatrix's estate, in the particular and special manner therein set forth. Everything else in the item is only incidental and explanatory. There is certainly no expressed intent to modify the general provisions in the body of the will relating to all the legatees.

An expressed intention to make an alteration in a will in one particular negatives by implication an intention to alter it in any other respect. Wetmore v. Parker et al., 52 N. Y. 467; Quincy, Exr., v. Rogers et al., 9 Cush. 291, 296.

Moreover, it is worthy of special note that the testatrix has manifested special care in this second codicil to guard against any implied or constructive revocation of any provisions of her will; this anxiety is shown by the fact that at the beginning of this codicil she says: "First. I ratify and confirm my said will, except so far as the same may be altered by this and the former codicil," and has closed the codicil by directing, "and lastly, I do ratify and confirm my said will and codicil, except so far as the same may be altered by this codicil." No other codicil has more than one similar clause.

(4) There is no doubt but that it is a rule for the construction of wills that if a legacy be left in common as distinguished from joint tenancy, to two or more named persons constituting a class, and one or more of such class predecease the testatrix, the share or shares of such deceased legatee or legatees will lapse. But this rule is only a rule of construction and yields to a contrary intent of the testatrix indicated by the will; as, for instance, an intent that there shall be no lapse, or an intent to dispose of the whole estate and save an intestacy in any part.

The facts, therefore, that the testatrix mentions by name "the children of my nephew Joseph Dixon, deceased," and that she gives a certain part of the residue of her estate to such named children "in equal parts," are not conclusive; and if the intention to give a right of survivorship is collected from the will as a whole, applied to the existing admitted facts, such intention must prevail. Stedham v. Priest, 103 Mass. 296; Jackson v. Roberts, 14 Gray, 551; Schaffer v. Kettell, 14 Allen, 528, 530, 531.

(5) But in the construction of a will, the court is at liberty, and in cases of any doubt, is bound, to look at the whole will and may in any part thereof, including codicils, look for evidence of the testatrix's intent in any particular. Quincy, Exr., v. Rogers et al., 9 Cush. 291, 295; Allyn v. Mather, 9 Conn. 114, 125, 126; Doughten v. Vandever, 5 Del. Ch. 66; Brounfield v. Wilson, 78 Ill. 467, 469, etc.; Sawyer v. Baldwin, 37 Mass. 378, 384, etc.

According to the principle last above stated, the court may note (1) the general intent of the testatrix manifested in the whole will, and negatived by no portion thereof to prevent a lapse in case of the death of any legatee before her; (2) the nomination by the testatrix in the body of her will, of a general class of persons, as substitutes to take in lieu of legatees deceased before her, and that the testatrix has not elsewhere named any person, or class of persons, not included in such general class of such substitutes, to so take in lieu of such predeceased legatees; (3) the fact that under the facts admitted of record by all parties to these proceedings and under the construction of the will opposite to that herein argued for by Mrs. Orth, the general intent of the testatrix to prevent a lapse would be nullified; (4) the fact that the testatrix has in all instances where she has intended to revoke former bequests expressed herself in her codicils explicitly, positively and unmistakably; as, for instance, in the third codicil, when she says: "Whereas, in my will, I have devised to the City of Wilmington, under the name of 'The Mayor and Council of Wilmington,' five thousand ($5,000) dollars in trust for the worthy poor of Wilmington. Now,

I revoke the said bequest." And again in the fourth
codicil, when, after reciting a bequest theretofore made
to Robert Salisbury, she says: " Now, therefore, I do
hereby revoke the said legacy so bequeathed," which
provisions plainly indicate her appreciation of the neces-
sity and propriety of positive averments in such cases;
(5) that, as appears by the admitted facts stated in the
bill of interpleader, the fund affected by the construc-
tion of the will prayed for by the executor, is more
than twice and a half as large as all the bequests which
she has thus, in unmistakable terms, revoked; (6) and
that the testatrix has, in the last codicil to her will,
executed so late as the 10th of October, 1890, herself
construed her will in perfect accordance with her intent
and meaning, as contended for by Mrs. Orth, and in
the following words: " Whereas, in my will, I have
bequeathed to Robert Salisbury a legacy of five thou-
sand dollars, and by further general provisions of my
will and the codicil thereto, said legacy would be pay-
able to his issue or legal representatives, and, whereas,
his daughter is now dead; now, therefore, I do hereby
revoke the said legacy so bequeathed." In these, the
latest words of the testatrix, is further plainly expressed
the testatrix's intent, under all the provisions of her
whole will, that in no event should a legacy lapse by
reason of the death before her of any legatee named,
and that in the event of any legatee dying before her
without issue, the same should be payable to such pre-
deceased legatee's next of kin, who would be " under the
intestate laws of the State of Delaware, the heirs-at-
law of such devisee or legatee."

If the expressions of, and the reasons for making, this provision in the codicil of 1890, it being the fourth codicil, be examined, it will be noted that it could have been made necessary only upon the death of Robert Salisbury, and that the fact of his death is clearly implied therein; that his issue, to-wit, his daughter, being dead, the testatrix believed that, according to her intentions expressed in her will and codicils, the legacy of $5,000 given to Robert Salisbury would be payable to his "legal representatives;" that in such a connection "legal representatives" means next of kin (see authorities cited later in this argument), which would be with reference to personalty, "such person or persons as would be the heirs-at-law of such devisee or legatee, under the intestate laws of the State of Delaware;" and that it was to prevent such operation in her will in his particular case that made, in the testatrix's opinion, this provision in her codicil a necessity.

Construing the pertinent provisions of the will, the second codicil and the fourth codicil together, they are all consistent with the testatrix's intention, as expressed in the body of the will, that in case of the death of any of the legatees before her, the heirs-at-law of such legatee should, to prevent a lapse of any bequest, be substituted in lieu of such deceased legatee; and that in case of such decease of such legatee leaving issue, that such issue, being also heirs-at-law of such deceased legatee, should take the bequest given to such deceased legatee.    Such a construction of the whole will leaves every provision thereof intact and in full force.    The contrary construction necessitates the utter rejection of the provision against lapse and for substitution in the

body of the will, and the disregarding of the evidences of intention appearing in the subsequent and latest codicil.

(6) But if it shall be contended that the latest provision of a will or a codicil must· govern the construction of the will in any particular, where such later expression of the testator's meaning introduces a new factor or varies the terms used in reference to the same subject-matter earlier in the will, we must come down to the fourth codicil for the latest form of expression of the testator's intent with reference to lapse and substitution.

·In this last codicil, in the above-mentioned provision relative to the bequest to Robert Salisbury, the testatrix plainly says that under the circumstances and facts of the case now before the court, a " legacy would be payable to his issue or legal representatives."

But where there is a bequest to one, or, in case of his death before the testator, to such legatee's " legal representatives," a lapse will not occur, and the bequest will go to such legal representatives, being his next of kin. Williams on Executors, *1209; Gitting v. McDermott, 2 Myl. & K. 69; Bridge v. Abbott, 3 Bro. C. C. *224; Hawn v. Banks, 4 Edw. Ch. 664; Long v. Watkinson, 17 Beav. 417; Kimbell v. Story, 108 Mass. 382, 384.

Much more clearly would this construction be necessary if the will contained an express provision against lapse, inasmuch as the intent of the testatrix would be more clear.   Sibley v. Cook, 3 Atk. 572.

Benjamin Nields, for John Dixon et al.

Codicil, codicillus, is defined to be " a little book of writing," is a supplement to a will, or an addition made

by the testator, and annexed to, and to be taken as a part of a testament; being for its explanation, or alteration, or to make some addition to, or else some subtraction from, the former dispositions of the testator.    2 Blackist. 500; 1 Williams on Executors, 8.

"A last will and testament, or any clause thereof, shall not be altered, or revoked, except by cancelling by the testator, or in his absence (presence), and by his express direction, or by a valid last will and testament, or by writing, signed by the testator, and attested and subscribed in his presence by two or more credible witnesses; but this clause shall not preclude nor extend to an implied revocation."    Rev. Code, chap. 84, § 10; Hall's Dig. 556, § 3.

The word " will " should be construed to mean " last will and testament," and to include the " codicil."    Rev. Code, chap. 5, § 13.

Under the statute, a will, or any clause thereof, may be altered or revoked, by a codicil, by a valid last will and testament, by a writing signed by the testator, or by implication.

The right to alter or revoke a last will and testament, or any clause thereof, by codicil is clearly conferred by the statute.

A revocation by codicil may be made where the codicil contains an expressed clause of revocation, or where the terms of the codicil are inconsistent with the provisions of the will.

A will or codicil may operate as a revocation of a prior testamentary instrument by the effect either of an express clause of revocation or of an inconsistent disposition of the previously devised property.    1 Jarman on Wills, 171.

A codicil likewise, if inconsistent with a preceding will, is, in law, a revocation of it.    1 Powell on Devises, 520.

If a subsequent testamentary paper be partially inconsistent with one of an earlier date, then such latter instrument will revoke the former as to those parts only where they are inconsistent.    1 Williams on Executors, § 88.

A codicil is a part of a will, but with the peculiar function annexed of expressing the testator's after-thought or amended intention.    The codicil should be construed with the will itself; and from its very nature it may, as a context, confirm, alter or altogether revoke an intention expressed in the body of the instrument to which it is annexed.    Schouler on Wills, § 487.

A codicil inconsistent with a previous will is construed very differently from inconsistent clauses in the same will.    Thus, where there are separate gifts of the same property to two persons by the same will, the beneficiaries take in common, but if the gifts are made in two separate testamentary instruments, the latter is a complete revocation of the former.    Barlow v. Coffin, 24 How. Pr. 54; 1 Jarman on Wills, 173; Evans v. Evans, 17 Sim. 107; 3 Mode. 206; Earl of Hardwick v. Douglas, 7 Cl. & Fin. 795.

If the provisions in the will and codicil are inconsistent, then effect can be given to both without doing violence to either.    But if effect cannot be given to both provisions without doing violence to one of them, then they are inconsistent, and one of them must fail.    A gift to the heirs-at-law of a legatee and a gift to the issue of a legatee defines two separate and distinct classes of

persons; "issue" includes only lineal descendants; "heirs-at-law of personalty" under the intestate laws of Delaware embrace collateral as well as lineal descendants and husband and wife.

To give effect to the word "issue," collateral heirs and husband and wife must be excluded; to give effect to the words "heirs-at-law," collateral heirs and husband and wife must be included.

A gift to "issue" includes all who come within that class, and it excludes all who do not come within that class.    3 Myl. & Cr. 697.

Effect cannot be given to both this will and codicil on the theory that, although they are inconsistent, the testator intended to give effect to both, or to use the terms of the will and codicil in the alternative.    In other words, that if, in any instance, a legatee dies without issue, then the legacy goes to the heirs-at-law under the will.

There is an inflexible rule that when will and codicil are inconsistent, full effect must be given to the codicil. In certain cases this rule is stated as follows:    The dispositions of a will are not disturbed further than is necessary to give effect to the codicil.    "Cases to which this rule applies," says Jarman, "are commonly occasioned by the person who frames the codicil, not having an accurate knowledge or recollection of the contents of the prior testamentary paper."    This rule is applied to a state of facts as follows:

1. Where a will contains two dispositions to the same person, *i. e.*, a specific and residuary bequest to A., and there is doubt as to whether the codicil revokes both bequests or only one.    If full effect can be given

13

to the language of the codicil by revoking one bequest alone, it is held not to revoke the other.   Wetmore v. Parker, 52 N. Y. 450; Quincy's Exr. v. Rogers, 9 Cush. 291.

2. Where a disposition in the will is clear and specific, a loose and general disposition in the codicil is held not to revoke it.   In re Arrowsmith's Trusts, 2 DeG., F. & J. 474; Molyneux v. Rowe, 8 DeG., M. & G. 368; Clesbury v. Beckett, 14 Beav. 583.

3. Where an absolute gift in fee-simple is given under a will, and by a codicil the gift is cut down for the benefit of beneficiaries who fail, and thereby the codicil is rendered absolutely ineffective and inoperative.  Norman v. Kynaston, 3 DeG., F. & J. 29; Mench v. Marchant, 6 Man. & G. 813; Doe Evers v. Ward, 18 Q. B. 196.

Absolute interest cut down for a particular purpose remains, so far as these purposes do not take effect, absolute.   Theobald on Wills, 245; Lassance v. Tierney, 1 MacG. 551.

If there is an absolute gift by will, and restrictions are imposed upon the legatee's enjoyment by a codicil, the absolute gift remains so far as the restrictions do not extend.   Norman v. Kynaston, 2 DeG., F. & J. 29; Watson v. Watson, 3 DeG., J. & S. 434; Theobald on Wills, 246.

A codicil inconsistent with a will, and without express words of revocation, revokes the will so far as the inconsistency exists.   Bosley v. Balsey, 14 How. 390; Kermode v. MacDonald, L. R., 3 Ch. App. Cas. 583; Flood v. Houser, 1 N. & M. 321; Larrabee v. Larrabee, 28 Vt. 274.

A class of distributees named in a codicil different from the class in a will is held to be an inconsistency; and the codicil revokes the class named in the will. Estate of Hunt, 133 Penn. St. 260; Sturgis v. Work, 122 Ind. 134; Warner v. Morse, 149 Mass. 400.

The word " children," in the fourth item of will (the residuary clause), in which the testatrix disposes by seven different bequests of the residue of her estate, is not descriptive of a class, but of particular individuals. Bain v. Lescher, 11 Sim. 397; Workman v. Workman, 2 Allen, 472; Theobald on Wills, 447; Hawkins on Wills, 67; Jarman on Wills, 343.

The intention of a testator is to be collected from the will itself, taking in aid the general rules of construction which have been settled by decision. In construing wills, courts are bound by the words it contains — of the words used they are to declare the plain meaning; should they adopt a different course, they would become the makers instead of the expounders of the will. Kean's Lessee v. Roe & Hoffecker, 2 Harr. 115; Wigram on Wills, 66.

George Gray and H. H. Ward, in reply.

The principle laid down in 1 Jarman, *173, relates to two or more wills. The principles relating to construction of a will and a codicil, however, are enunciated in the same volume, beginning with *175, etc.

The case from 17 Simon is one where certain property given by the original will absolutely to A., is by a codicil, given to B. and C. absolutely, by adequate, unmistakable and irreconcilable language.

The argument as to the inconsistency of the phrases
" heirs-at-law " and " issue," is fully met by the points
made in our main brief.  In passing, however, it is well
to note that the quotation from Cottenham, L. C. (3 Myl.
& Cr. 697), is a mere *dictum* in the case of Barber v.
Barber, there being no class consisting of unnamed per-
sons in that case; that the facts of that case bear no
similarity to the facts of this case; and that the Lord
Chancellor does not use the phrase *designatio unius
est exclusio alterius.*   This Latin phrase has, indeed,
no application in the construction of a will or codicil;
the · well-recognized rule of construction in such cases
being that only an impossibility that the two provisions
can be construed together, and both be given some ef-
fect, will justify the rejection of a provision in the
original will.

The case of Norman v. Kynaston, cited in the learned
solicitor's brief, will bear reading, as it appears in 3
DeG., F. & J. 29.   The case of Watson v. Weston, 3
DeG., J. & S. 434, will bear reading for our contention
upon this will.

As to the cases cited, and the extracts quoted there-
from, upon the proposition next appearing in the solic-
itor's brief, to-wit: that " a codicil inconsistent with a
will, and without express words of revocation, revokes
the will, so far as the inconsistency exists," we would in
brief say: that there is no doubt but that cases can be
found, probably many more than the learned counsel has
cited, of wills and codicils so wholly and absolutely in-
consistent that they cannot stand together.   In such a
case, if the codicil can operate under the facts, it would
probably be given effect in preference to the provision

of the will thereby revoked.    Each of such cases cited will, upon careful examination, appear to have had their own peculiar facts, which more or less assisted the court to come to their conclusions.

As above noted, no will case can be cited, in any other will case, as an authority upon which to base a judgment; they all, however, illustrate the principles of law which they enunciate, and affirm general rules of construction which must be applied by each court to different cases and states of facts as they are brought before it.

Bosley v. Bosley, 14 How. 390, is cited also in our brief.    The point of the decision is stated by syllabus, as follows: " Whether a residuary clause passes land, the specific devise whereof was revoked by a change of interest by act of the testator after the date of the will, is a question of intent to be decided in each case upon its own circumstances."    There were two questions of revocation, one decided for, and the other against a revocation, in this same case.    The court decided the one for which Mrs. Orth cites the case, on the ground of implied intent of the testator, and that he apparently intended not to die intestate of any part of his estate.

Kermode v. MacDonald, L. R., 3 Ch. App. Cas. 583, is a case where the conflict raised by words was so plain that in spite of the anxiety of Lord Cairns, Lord Chancellor, to construe the will and codicil together, so as to save the bequest in the body of the will, he was obliged to decide otherwise.    This case illustrates the principles of construction insisted on in our main brief.

Larrabee v. Larrabee, 28 Vt. 274, was decided upon its own peculiar facts and upon the evidence of intent gathered from circumstances and various provisions of

the will. There is, moreover, express words of revocation of the provisions of the will.

By the codicil in Estate of Hunt, 133 Penn. St. 260, there was an express new disposition of the whole estate of the testatrix. The court itself says, in its opinion, speaking of the disposition of the property by the will and codicil: " But that method of distribution is entirely destroyed by the codicil which substitutes a totally different method." Of course, it needs no argument to show how vitally the Hunt case differs from the case before the court.

In the codicil of Warner v. Morse, 149 Mass. 400, there was an express revocation of the bequest in the will and a new one was substituted. It is, therefore, no authority for any principle of implied revocation of a will by a codicil.

Bain v. Bescher, 11 Sim. 397, simply enunciates a rule of construction expressly recognized by our main brief, which is, however, wholly consistent with the contention then made.

Workman v. Workman, 2 Allen, 472, recognizes the same principle as Bain v. Bescher. It also expressly recognizes Jackson v. Roberts, 14 Gray, 551, then just decided by the Massachusetts court, and cited in our brief, as good law.

WOLCOTT, CHANCELLOR.— Hannah Shipley in and by her last will and testament, after certain bequests, directed her executor to divide all her real and personal property into seven equal shares, and in order to make such division, authorized and empowered him to sell all or any part thereof; she then devised and bequeathed the same as follows:

" 1st. One of those equal shares to the children of my nephew Joseph Dixon, deceased, viz.: Elizabeth Orth, Olivia Dixon, and Anna Dixon, in equal parts.

" 2d. Another of those seven equal shares, to my nephew, Samuel Dixon.

" 3d. Another of those seven equal shares, to the children of my nephew Thomas Dixon, deceased, to-wit: Thomas N. Dixon, Mary Emma Dixon, George Dixon, and Sallie Dixon, in equal parts.

" 4th. Another of those seven equal parts to my niece Mary Anna Paschall.

" 5th. Another of those seven equal shares to my niece Emma Bayard.

" 6th. Another of those seven equal shares to the children of my nephew Thomas Shipley, deceased, to-wit: Hamilton Shipley, Samuel Shipley, Emma Shipley, and Elizabeth Shipley, in equal parts.

" 7th. And the other of those seven equal shares, to my niece Sarah Bringhurst."    *    *    *    " Provided, always, and I do hereby direct that if any of the devisees or legatees in this, my will, named, shall die before me, then the said devises and legacies shall not lapse, but shall pass and go to such person and persons as would be the heirs-at-law of such devisee or legatee under the intestate laws of the State of Delaware."

On the 28th day of November, A. D. 1885, the testatrix made and executed a codicil containing the following provisions: " In case of the death before my death of any of the legatees or devisees named in my will, the share of those dying before me to go to their issue, the said issue to take the share of their deceased parent, except as to any share which would go to Samuel D.

Paschall." The testatrix then devised to the said Samuel D. Paschall his share for and during his life in trust, and upon his death, to his children or the issue of any of his deceased children freed from the trust.

Olivia Dixon and Anna Dixon, two of the devisees and legatees named in the first class, died before the death of the testatrix without leaving issue. George Dixon, one of the legatees and devisees named in the third class, also died before the testatrix without leaving issue. Mary Ann Paschall, the sole legatee and devisee of the fourth class, died before the testatrix, leaving to survive her, among other children, the said Samuel D. Paschall, referred to above.

Hannah Shipley, the testatrix, died on the 15th day of December, A. D. 1891, and letters testamentary were granted in due course of law to Edward Bringhurst, Jr., the executor named in the foregoing will.

The essential point for determination in this case is whether the shares of Olivia Dixon and Anna Dixon, of the first class of devisees and legatees named in the will, and George B. Dixon, of the third class, who died before the testatrix without leaving issue, devolved upon their respective heirs-at-law or lapsed.

The decision of this question depends upon, whether the clause in the will which provides, " that if any devisees or legatees in this, my will named, shall die before me, then the said devises and legacies shall not lapse, but shall pass and go to such person and persons as would be heirs-at-law of such devisee or legatee under the intestate laws of the State of Delaware," was revoked by the provision in the codicil directing that " in case of the death before my death of any of the devisees or lega-

tees named in my will, the share of those dying before me to go to their issue," etc.

In order that a codicil shall operate as a revocation of any part of a will, in the absence of express words to that effect, its provision must be so inconsistent with those of the will as to exclude any other legitimate inference than that of a change in the testator's intention. They are both supposed to be made and executed with the same solemnity and deliberation, and, therefore, both are entitled to the same degree of consideration.

The part of the codicil now before us contains no express words of revocation.    It only remains, therefore, to determine whether this particular provision of the will and the codicil are inconsistent or contradictory at all, or whether they are so much so as to justify the conclusion that they are absolutely inharmonious or irreconcilable, under the rules recognized and adopted by all courts for the construction of wills.

The language of the former is so plain and explicit as to leave no room for doubt as to the intention of the testatrix.    She expressly declares that the death before her death of any of the beneficiaries named in her will shall not cause the lapse of any of the devises and legacies, but that the shares of those so dying shall pass and go to those persons who would be the heirs-at-law of said beneficiaries under the intestate laws of this State. The language quoted from the latter is equally clear and explicit.    In this provision the testatrix declares that the shares of those devisees and legatees who shall predecease her shall go to their issue.    I repeat the inquiry: Are these two provisions inconsistent and contradictory? It is very clear that they are not, so far as the death of

any legatee before the decease of the testatrix, who left child or children that survived her, is concerned. The language of the codicil could not, under such circumstances, change or alter the result which would have occurred, if it had been entirely omitted, and the testatrix had permitted the will to remain without this amendment. According to the codicil, the shares of those devisees and legatees dying before her death are to go to their issue. Exactly the same result would have occurred under the provisions of the will, for the issue of the deceased devisees and legatees would have been their heirs-at-law under the intestate laws of this State. The codicil then simply reaffirms in different language the already expressed intention of the testatrix in the will, if all the devisees and legatees who predeceased her had left issue. They differ widely in range or scope, but they do not differ so far as they express the preference of the testatrix for the children of a deceased legatee. This difference arises by reason of the terms used by the testatrix to designate the substitutes who were to take in the place of those devisees and legatees predeceasing her. In the will the substitutes are denoted by the term "heirs-at-law;" in the codicil, by the term "issue."

Though the words "heirs-at-law" are broader and more comprehensive than the word "issue," yet, the latter is always embraced in the former, though used in its most technical sense. Now, since the term in the will will carry the gift to the persons included in the term "issue," to the exclusion of the collateral heirs of any deceased legatee, how can it be argued that there is any antagonism be-

tween the intention expressed in the will and the intention expressed in the codicil? If these terms had been used by the testatrix in the order in which they stand to limit the quantity or duration of an estate in lands, and not to indicate the objects of her bounty, as it was clearly her purpose to do, we should be met with a very different condition of things. In such a case the language of the will would have to yield to the language of the codicil, and the donee would take such an estate only as the language of the latter would import.

Thus, up to the point where the direct line of descent terminates, there is no clash between these two provisions. The disputed terms of both are fully satisfied as is forcibly illustrated in the case of Mary Ann Paschall, one of the legatees who died prior to the death of the testatrix, leaving children still living. No objection has been raised, neither could there be to the children of this deceased legatee taking her share, because they answer to the description of the persons entitled under either the will or the codicil.

But just at this point a more serious and embarrassing question arises, and that is whether there is any inconsistency between the provisions of the will and the codicil, as applied to the collateral heirs of a legatee, dying before the testator without issue.

The will declares that upon the death of any devisee or legatee, before the death of the testatrix, the devise or bequest of such deceased devisee or legatee shall not lapse, but shall go to his or her heirs-at-law. The codicil declares, omitting the words " shall not lapse," that the devise or legacy to such deceased devisee or legatee shall go to his or her issue. The will and the codicil

constitute part of the same testament and they are each in legal estimation equally sacred and inviolate. Any part of the one not inconsistent with the other, either expressly or inferentially, cannot be set aside as unnecessary language. There is not a word or a syllable in the second codicil, or any of the others, that can be held to operate as a revocation of the words " shall not lapse," contained in the body of the will. These words must, therefore, remain as an essential part of the last will and testament of the testator. And the intention thereby expressed, against a lapse and a consequent intestacy of any portion of her estate, must be recognized at every stage of the discussion and interpretation of the will. Courts, in such cases, are always very broad and liberal in their views so as to prevent the frustration or defeat of such a clearly expressed purpose as that indicated by the words above quoted.

Nothing is said in the codicil as to those devisees and legatees who shall die before the testatrix leaving no issue to take their parent's share, as was the case with Olivia, Anna and George B. Dixon. Now, if the codicil stood alone, and the only provision against a lapse was that contained in it, a lapse as to the shares of the deceased Dixons would have been the inevitable result. It does not, however, stand alone. It must be construed in connection with the provision of the will, which declares against a lapse and substitutes the heirs-at-law of any original legatee, who died before the testatrix without issue. While it is true the codicil substitutes for such deceased original legatee, his or her issue, but in the event of the death of any original legatee before the testatrix without issue, it provides no substitute to take

in his or her place. As to that contingency, it is absolutely silent. Now, at the point when the codicil becomes silent, what is there to hinder the will from speaking words, as the only medium left through which to obtain the desire of the testatrix as to the further disposition of such legacy? That is to say, what is there to prevent the will from taking up the legacy of such deceased legatee just where the codicil drops it, and carrying it to its destination, to his or her heirs-at-law, according to the original purpose of the testatrix? Is it not a little singular, at least, that she should have reaffirmed her expressed purpose to avoid a lapse, and then in the next breath increased the chances or possibility of a lapse? It looks as if she had redeclared her intention to do a queer thing and then abandoned the means by which its accomplishment could alone be fully attained. In view of the foregoing consideration, I must confess my reluctance to yield assent to the conclusion that the testatrix intended by the codicil to make a contingency probable, which before was barely possible, upon the happening of which the scheme of distribution so clearly set forth in the original will was liable to a partial if not a total failure.

Fortunately, we are not restricted to these provisions of the will and the second codicil as the only source of light upon this subject. The subsequent provisions of this codicil and certain provisions of the remaining codicils are quite suggestive as to what the testatrix meant in the use of the word " issue " found in the second paragraph of the second codicil.

It may be assumed as generally true, that in all the codicils, with perhaps the one exception, the testatrix

did not leave in doubt or obscurity her original purpose
to avoid a lapse as to any portion of her estate, and as a
means to that end to keep it in the same line or course of
descent as that prescribed in the body of the will. This
is equally true of other codicils in which alterations are
made, involving radical or specific changes, as to the
share of any legatee who might predecease her without
issue. Having arranged the beneficiaries under her
will in classes composed, I believe, of nieces and neph-
ews, she directed the great bulk of her property to be
distributed among them in equal shares. She seems to
always have had in mind the desire that the share of
each legatee so dying should go to the surviving mem-
ber of his or her class, or to his or her next of kin. The
testatrix never made herself the stock or root from whom
the degree of kinship should be computed or reckoned
in ascertaining who the takers of any legacy would be
in case of the death of any legatee before the death of
the testatrix, in that event.

And now, to-wit: This 26th day of September, A.
D. 1894, the above-stated cause having come on to be
heard before the Chancellor, and argument of counsel
having been heard thereon, and the same having been
maturely considered, it is hereby ordered, adjudged
and decreed that the shares of the said Olivia F.
Dixon, Anna Shipley Dixon and George B. Dixon,
in the estate of and under the will of Hannah
Shipley, deceased, did not lapse upon their decease
without issue before the said testatrix, but the said
shares of the said Olivia F. Dixon, Anna Shipley
Dixon and George B. Dixon, descended and came
to and upon their heirs-at-law, to-wit: that the said

shares of the said Olivia F. and Anna Shipley Dixon descended and came to and upon their surviving sister, Elizabeth B. Orth, and that the said share of the said George B. Dixon descended and came to and upon Thomas N. Dixon, Mary Emma Dixon and Sallie B. Dixon, in equal shares.

And that the said Edward Bringhurst, Jr., executor of Hannah Shipley, deceased, is hereby ordered, instructed, directed and decreed within sixty days from the date of this decree, to pay over and deliver unto the said Elizabeth B. Orth, the said shares under the said will of the said Olivia F. Dixon, deceased, and the said Anna Shipley Dixon, deceased, and unto the executor of the said Thomas N. Dixon, deceased, and unto Mary Emma Dixon and Sallie Dixon, in equal shares or parts, the said share under said will, of the said George B. Dixon, deceased, in accordance with this decree.

And it is further ordered, adjudged and decreed that the costs in this cause are taxed at the sum of $63.50, and that the same shall be paid by the said executor, the complainant, out of the general funds of the said estate.