EQUITABLE TRUST COMPANY, Trustee under the Last Will and Testament of James C. McComb, deceased,

*vs.*

ELIZABETH B. MILLS, FLORENCE McCOMB, ELIZABETH B. PEOPLES, JOHN MILLER SINCLAIR and JAMES McCOMB SINCLAIR.

*New Castle, December 1, 1948.*

*Caleb S. Layton*, of the firm of Richards, Layton & Finger, for plaintiff.

*Alexander L. Nichols*, of the firm of Morris, Steel, Nichols & Arsht, for defendants Elizabeth B. Mills and Florence McComb James.

*Thomas Herlihy, Jr.*, for defendant Elizabeth B. Peoples.

*David F. Anderson* and *Henry Van Der Goes,* of the firm of Southerland, Berl & Potter, for defendant John Miller Sinclair.

*J. Rankin Davis,* for defendant James McComb Sinclair.

SEITZ, Vice-Chancellor: The plaintiff, Equitable Trust Company, is trustee under the will of James C. McComb (hereinafter called the "testator"), who died August 28, 1931. At various times after the testator executed his original will dated May 17, 1906, he executed some fifteen codicils thereto. Under his original will, the testator created three equal trusts of his residuary estate, one for each of his three children, Henry S. McComb, Elizabeth B. Mills and Florence G. Sinclair (now Florence McComb James). His children were to receive the income for life. Upon the death of each child, the trust corpus was to be paid to the children or issue of the deceased child, or to be paid in a designated manner in default of children or issue. In the case of each trust, the testator's children who were not beneficiaries thereunder were named as co-trustees.

The three residuary trusts became active at the testator's death in 1931. The farm owned by the testator at Claymont, Delaware, constituted a part of his residuary estate, and consequently became a part of the testamentary trusts. The trustee has decided that the Claymont farm should be sold, and has received an offer to purchase some 248 acres thereof, subject to procuring a valid transfer for the purchaser.[1] The testamentary power of sale given the trustee is made subject to the approval of certain beneficiaries under the will. Due to certain language in the original will and in the fourth codicil thereto, the trustee is uncertain as to which beneficiaries are required to assent to the sale of the farm. It desires the court's instructions on this point.

---

[1] A proposed sale of the balance of the farm property to another purchaser also involves the issue here being decided. This sale is discussed at a later point in this opinion.

Under Item Nine of the original will, which includes the farm within its operation, the testator provided:

"I hereby authorize, empower and direct the trustees herein provided for and appointed, in their discretion, by and with the consent of their cestuis-que-trust of the age of twenty one years or over, to sell at public or private sale, all or any part of my real estate free and discharged of any and all trusts, uses or limitations, and without liability on the part of the purchaser for the application, non-application or misapplication of the purchase money or proceeds of sale; the consent of any cestui-que-trust, as aforesaid, to the sale of any real estate in which such cestui-que-trust is beneficially interested, shall be evidenced by him or her joining with the trustees, in signing any deeds necessary to effect such sale."

On February 11, 1918, the testator executed the fourth codicil to his will. In this codicil, he made the Wilmington Trust Company, rather than his children, the trustee of the three aforementioned trusts.[2] In the same codicil the testator made the following provision with respect, *inter alia,* to the sale of the Claymont farm:

"It is my Will, and I order and direct, that no lease or letting of the farm at Claymont, New Castle County, Delaware, where I now reside, shall be made without the consent, in writing, of a majority of my three children Harry, Elizabeth and Florence, or the consent of a majority of such of them as may be living at the time such lease or letting is made; and that no sale, conveyance or deed be made of or for the farm at Claymont, aforesaid, where I now reside, or the houses and lots of land situate in the City of Wilmington, New Castle County, Delaware, on the west side of French Street, between Eleventh Street and Twelfth Street, without the consent, in writing, of a majority of my said three children, or the consent of a majority of such of them as may be living at the time of such sale, conveyance or deed being made and executed; such consent to be evidenced by a majority of those required to give consent as aforesaid, joining in, and executing said lease, sale, conveyance or deed, as aforesaid. Upon the death of the survivor of my said three children, the restrictions and requirements of consent by them or any of them, to any such lease, sale, conveyance or deed as set forth in this Item 7, shall thereupon cease, determine and no longer exist."

Thus, the original power of sale was made subject to the consent of the "cestuis-que-trust of the age of twenty

---

[2] A later codicil substituted the plaintiff as trustee.

one years or over", while the fourth codicil provided that the power, insofar as the farm was concerned, was subject to the consent of a majority of the testator's three children.

The trustee is uncertain whether the quoted language of the fourth codicil alters the provision of the original will by requiring only the consent of a majority of the testator's children, rather than the consent of all the beneficiaries who have reached twenty-one years of age.

One of the testator's children, Henry S. McComb, died August 7, 1937, without issue. The testator's now living children, Elizabeth B. Mills and Florence McComb James, have indicated that they consent to the proposed sale of the Claymont farm by the trustee. However, John Miller Sinclair and Elizabeth B. Peoples, grandchildren of the testator and possible remaindermen, have indicated a refusal to give their consent.

Two of the testator's grandchildren, John Miller Sinclair and Elizabeth B. Peoples, urge that they come within the provision of Item Nine of the original will requiring the consent of the "cestuis-que-trust of the age of twenty one years or over" as a condition to the right of the trustee to sell the farm. Since they are over twenty-one years of age and are beneficiaries under such trusts, albeit remaindermen, I believe their consent was necessary under the terms of the original will. Did the language of the fourth codicil modify that requirement? The testator's living children, as well as one grandson, James McComb Sinclair, argue that it did. They say that under the language of Item 7 of the codicil of February 11, 1918, only the consents of a majority of the testator's children are required. They contend that the fourth codicil constituted a revocation of the original will to the extent that the original will may have required the consent of such grandchildren.

This court stated the legal principle here applicable in *Bringhurst v. Orth*, 7 *Del. Ch.* 178, 201, 44 *A.* 783, 784:

"In order that a codicil shall operate as a revocation of any part

of a will, in the absence of express words to that effect, its provision must be so inconsistent with those of the will as to exclude any other legitimate inference than that of a change in the testator's intention."

Thus, the real question is whether the language of Item 7 of the February 11, 1918 codicil is so inconsistent with the language of Item Nine of the original will dealing with the beneficiaries whose consent to a sale is required that it is only reasonable to infer that the testator intended the codicil to revoke or modify the former provision.

Let us first analyze the pertinent language of the original will and the fourth codicil in the light of the surrounding circumstances.

The original will required the consent of the "cestuis-que-trust of the age of twenty one years or over." When this will was drawn in May 1906, the testator's three children were 30, 29 and 27 years of age respectively. While none of the testator's now living grandchildren had been born when he executed his original will in May 1906, his daughters were married. Some 12 years later when the testator executed the fourth codicil to his will, all three of his now living grandchildren had been born, although they were only about 11, 10 and 9 years of age respectively. Moreover, by the fourth codicil, the testator replaced his children with a corporate trustee for all three trusts.

It should be noted that the fourth codicil does not contain any explicit power of sale—rather the language has reference to the consent provisions. It should also be noted that the language of the fourth codicil deals explicitly with the necessary consents in connection with the sale of the Claymont farm. Furthermore, the language does not mention a trust or trustee.

Is the consent provision contained in the fourth codicil dealing with the Claymont farm so inconsistent with the consent provision contained in the original will that it evidenced an intent to revoke the original provision?

Counsel for the grandchildren, John Miller Sinclair

and Elizabeth B. Peoples, suggest that there are two possible ways to reconcile the consent provisions of the will and the fourth codicil:

(1) Construe Item 7 of the fourth codicil as referring to a sale by the executor.

(2) Construe Item 7 of the fourth codicil as applying only to the consent to be given by the testator's children.

The language of the codicil is not fairly susceptible of a construction limiting its application to a sale by the executor. There is an explicit and separate power of sale given the executor in the original will and there is nothing in the fourth codicil which would seem to impair that power. Moreover, the language of the fourth codicil speaks in terms of a possible period of time which would normally be expected to extend beyond the time necessary to close this estate. Thus, it makes reference to the procedure upon the death of the testator's children. Additionally, the language of Item 7 of the codicil refers explicitly only to the problem of consent. It, therefore, has an obvious connection with the provision of the original will creating the trustees' power of sale and making it subject to the consent of adult beneficiaries. I conclude that Item 7 of the fourth codicil should not be construed to refer to a sale by the executor.

The second suggested construction is that the codicil applies only to the consent to be given by the testator's children. The fourth codicil deals explicitly with the procuring of consents in connection with the sale of the Claymont farm where the testator then lived. The testator explicitly stated that the "farm at Claymont" was not to be sold "without the consent, in writing, of a majority of my said three children, or the consent of a majority of such of them as may be living at the time of such sale". The original will already required the consent of the testator's children since they were admittedly "cestuis-que-trust" over twenty-one years of age. Consequently, if we say that the consent provision in the will and in the codicil

are not in conflict, we are, in effect, saying that the particular language of the codicil merely reaffirmed the provision of the will insofar as the testator's children were concerned, except that it reduced their assent from a unanimous consent to a majority. I find nothing in the language of the will, the codicil, or the surrounding circumstances which would indicate that the testator desired or intended to reduce the number of consents required in the case of his children, and yet intended to continue the provision of the original will requiring the consent of all other beneficiaries over twenty-one years of age. There is nothing to show that the testator desired to give his grandchildren a greater right to prevent the sale of the home farm than his own children. In my opinion, it is not unreasonable to infer that the testator, by the time he drew his fourth codicil and substituted a corporate trustee, appreciated that the original consent provision might become unduly restrictive since it gave a possible veto power to many possible beneficiaries, some of whom might be completely unknown to the testator. Moreover, he was substituting a corporate trustee for his own children which meant that they could only veto and not originate a sale.

I conclude that neither suggested construction advanced by the two grandchildren is tenable. On the contrary, it appears that the codicil impliedly revoked the consent provision of the original will dealing with the power of sale. In reaching my conclusion, I have given some weight to the fact that the consent provision in the codicil makes specific reference to the Claymont farm—the testator's home. In order to sell the Claymont farm the trustee is required to procure only the consent of the testator's three children, or a majority of such of them as may be living at the time of the sale. Since the testator's son, Henry, is dead, it follows that in order to sell the Claymont farm at the present time the trustee must procure only the consents of Elizabeth B. Mills and Florence McComb James.

James McComb Sinclair, a possible remainderman un-

der one of the trusts set up by the testator, has offered to purchase a portion of the Claymont farm for $15,000. The trustee has asked the court to approve such a sale.

I shall not detail the evidence offered in support of the trustee's request. I have considered the evidence carefully and I do not feel that the court should approve the sale upon the present record. The evidence demonstrates that the principal value of this property lies in its commercial possibilities created by the possible erection of a housing development on the rest of the farm. If that factor can be fairly excluded, then another picture would be presented. The appraisers did not consider that element of value in fixing $15,000 as a fair value. Moreover, no effort was made to secure another offer. I see no reason to lend this court's approval to the granting by the trustee of what appears to be preferential treatment to one possible remainderman, especially where there are objections. The court will not approve the sale of the balance of the farm to the defendant James McComb Sinclair on the present showing.

An order accordingly will be advised on notice.